USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/2/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NERY CHERY,

     *Plaintiff,*

    - *against* -

NATIONSTAR MORTGAGE LLC,
NATIONSTAR MORTGAGE HOLDINGS INC.,
FORTRESS INVESTMENT GROUP LLC, and
WELEY R. EDENS,

     *Defendants.*
-----------------------------------------------------------------X

18-cv-1240 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Nery Chery brings this action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against Defendants Nationstar Mortgage LLC, Nationstar Holdings, Inc., Fortress Investment Group LLC, and Wesley R. Edens. Defendants now move to dismiss the complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), failure to state a claim under Rule 12(b)(6), and because Plaintiff's claims are precluded by *res judicata* and collateral estoppel. The motion to dismiss is granted.

## BACKGROUND

On April 26, 2006, Mela Kissoon Persuad executed a promissory note reflecting that she had received a loan of $810,000 from BNC Mortgage, Inc. ("BNC"). *See* Chirch Decl. Ex. A, Promissory Note. To secure the $810,000, Persuad executed a mortgage ("Mortgage") on property located at 108-51 48th Avenue, Cornona, New York, 11368 ("Property"), and delivered it to the nominee for BNC, Mortgage Electronic Registration Systems, Inc. ("MERS"). *See* Chirch Decl. Ex. B, Mortgage. Persuad defaulted on her mortgage payments, and MERS

instituted a foreclosure action against Persuad and other defendants in the Supreme Court of the State of New York, Queens County, on or about February 21, 2007 ("Foreclosure Action"). *See* Chirch Decl. Ex. C., Summons and Complaint in *Mortg. Elec. Registration Sys., Inc. v. Mela Kisson Persuad, et al.*, Index No. 4996/2007. On January 3, 2008, the state court entered a judgment in favor of MERS. *See* Chirch Decl. Ex. D, Judgment of Foreclosure and Sale.

Plaintiff subsequently moved for leave to intervene in the Foreclosure Action, and the state court granted the motion. *See* Chirch Decl. Ex. E, Foreclosure Action 2010 Order at 2. On June 3, 2009, Plaintiff filed an answer in the Foreclosure Action, asserting various defenses and counterclaims seeking to set aside and void the Mortgage. *See id.* Specifically, Plaintiff alleged that she was the original owner of the Property, and that she was the victim of a "mortgage rescue scam," in which certain nonparties fraudulently induced her to transfer ownership of the Property by promising that title would be transferred back to her, and then sold it to Persuad, a straw purchaser, instead of returning the title to Plaintiff. *See id.* at 4.

MERS moved to dismiss Plaintiff's defenses and counterclaims, and the state court granted the motion on April 12, 2010. *See id.* at 2, 8. The court also denied Plaintiff's cross-motion to amend her answer to assert claims against MERS and third-party claims against BNC for fraud and misrepresentation. *See id.* With respect to the fraud and misrepresentation allegations, the court found that Plaintiff had failed to allege:

> any misrepresentation made by BNC Mortgage or [MERS,] . . . [any] allegation which would support a finding of vicarious liability on the part of BNC Mortgage or [MERS] for the alleged misrepresentations and fraud perpetrated by [certain nonparties] . . . [or] any basis upon which to find BNC Mortgage or MERS guilty of conspiracy to defraud or aiding and abetting fraud.

*Id.* at 5. Subsequently, the court issued an Amended Judgment of Foreclosure and Sale on July 26, 2013. *See* Circh Decl. Ex. F, Amended Judgment of Foreclosure and Sale.

2

On September 26, 2013, the Mortgage was assigned to Nationstar Mortgage LLC. *See* Chirch Decl. Ex. G, Mortgage Assignment. On August 30, 2014, in accordance with the Amended Judgment of Foreclosure and Sale, the court-appointed referee deeded the Property to Nationstar Mortgage LLC. *See* Chirch Decl. Ex. H, Referee's Deed. Eviction proceedings commenced in New York City Civil Court, and warrants of eviction were issued in September 2015. *See* Chirch Decl. Ex. J, State Court Action 2016 Order, at 2. On January 29, 2016, Plaintiff filed an Emergency Order to Show Cause seeking to stop the eviction on the ground that she was not served with proper notice, but the civil court found that she had been served properly. *See id.*

On July 26, 2016, Plaintiff brought an action in Queens County Supreme Court ("State Court Action") against the same Defendants as in this action, alleging two causes of action under RICO and four causes of action under state law. *See* Chirch Decl. Ex. I, State Court Complaint. On December 27, 2016, the state court dismissed the State Court Action against Defendants. *See* Chirch Decl. Ex. J, State Court Action 2016 Order. The court held that Plaintiff's claims were barred by *res judicata* and collateral estoppel because they arose from the same transaction or occurrence that formed the basis of the Foreclosure Action, and because Plaintiff failed to demonstrate the absence of a full and fair opportunity to contest the prior determinations in the Foreclosure Action. *See id.* at 3-4.

On March 15, 2017, Plaintiff filed with this Court a complaint and an order to show cause to stop her eviction ("2017 Action"). *See* Case No. 1:17-cv-1875 Dkt. 1, 3. That same day, the Court (Cote, J., sitting in Part I) denied Plaintiff's application for an order to show cause, noting that "[t]his is the third litigation over the foreclosure. The plaintiff has failed to prevail in the two prior state court litigations, the second of which included a RICO claim. There is a failure to

3

show a likelihood of success." *See id.*, Dkt. 3. On interlocutory appeal, the Second Circuit affirmed this order on August 8, 2017. *See id.*, Dkt. 6. On December 20, 2017, the Court dismissed the 2017 Action without prejudice for lack of activity. *See id.*, Dkt. 7.

On February 12, 2018, Plaintiff initiated a new action by filing yet another complaint and order to show cause with the Court, raising the same issues as in the 2017 Action. *See* Dkt. 1, 11. Once again, the Court denied Plaintiff's application, and the Second Circuit affirmed. *See* Dkt. 11, 16. Defendants now move to dismiss Plaintiff's claims with prejudice.

## DISCUSSION

### A. Legal Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A court may refer to "the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and public records when considering a motion to dismiss." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2010) (citation omitted).

"[I]t is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion." *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 470 (S.D.N.Y. 2009) (citation omitted). Because "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," the Court applies

4

the *res judicata* and collateral estoppel doctrines of New York. *See O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) (citation omitted).

**B.     Analysis**

First, Defendants move to dismiss under *Rooker-Feldman*. The *Rooker-Feldman* doctrine holds that a district court lacks subject-matter jurisdiction over cases where: (1) the plaintiff lost in state court, (2) the state-court judgment was entered before the federal action was filed, (3) the plaintiff complains of injuries caused by the state-court judgment, and (4) the plaintiff invites district court review and rejection of the state-court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Applying these requirements, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *See Nath v. JP Morgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 136084, at *21 (S.D.N.Y. Sept. 30, 2016) (quotation and alteration omitted) (collecting cases).

Indeed, each of the four requirements is satisfied here. It is indisputable that the first two requirements are satisfied: Plaintiff lost in the Foreclosure Action, and the Amended Judgement of Foreclosure and Sale was entered before Plaintiff brought the present action. The third and fourth requirements are also satisfied. Plaintiff complains of injuries caused by the state-court judgment because, although Plaintiff couches her claims in terms of civil RICO violations stemming from "mortgage fraud," the only injury she alleges is the foreclosure on the Property, which stems directly from the Foreclosure Action. *See* Compl. ¶¶ 9, 83, 90; *Nath*, 2016 U.S. Dist. LEXIS 136084, at *25 (finding third requirement satisfied where "Plaintiff does not articulate how he was injured by any of the allegedly void or invalid assignments or agreements apart from any role that they may have played in the State Court's decision to issue the State

5

Court Foreclosure Judgment."). To remedy this injury, the Court would be required to review and reject the state-court judgment in the Foreclosure Action. *See Charles v. Levitt*, Nos. 15-cv-9334, 15-cv-9758, 2016 U.S. Dist. 95725, at *12-13 (S.D.N.Y. July 21, 2016) (finding fourth requirement satisfied and dismissing RICO claims under *Rooker-Feldman* where plaintiff's "theory of entitlement to relief is entirely grounded on the claim that the state court judgment and the affidavit on which it was based were fraudulently procured"). Moreover, Plaintiff sought an injunction to stop her eviction, removing any doubt that this action invites review of the state-court judgment. *See Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 503 (S.D.N.Y. 2016) ("In fact, Graham even seeks an injunction against the public auction of his home; this claim for relief further underscores that Graham's standing claims attack the substance of the foreclosure judgment."). Thus, Plaintiff's claims are barred under *Rooker-Feldman*.

Because *Rooker-Feldman* applies, Plaintiff's claims must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. Although Defendants request dismissal with prejudice, the Court is constrained to dismiss the case without prejudice because it lacks subject-matter jurisdiction. *See Charles v. Levitt*, 716 Fed. Appx. 18, 22 (2d Cir. 2017) (unpublished) (holding that a district court lacks the power to dismiss with prejudice where it lacks subject-matter jurisdiction due to *Rooker-Feldman*) (citing *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)).

In the alternative, even if *Rooker-Feldman* did not apply, Plaintiff's claims are barred by *res judicata*. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in the prior action." *Board of Managers of 195 Hudson St. Condominium v. Jeffrey M. Brown*

*Assoc., Inc.*, 652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009). "New York applies a transactional approach to res judicata, so that a final decision in one action bars all subsequent claims arising out of the same transaction or series of transactions, even if based on different legal theories or seeking a different remedy." *Id.*

There is no dispute that the judgments in the Foreclosure Action and the State Court Action are final judgments. *See* May 16, 2018 Conference Tr. at 4:12-14. Those cases each took place between Plaintiff and either Defendants or parties in privity with them. *See Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970) (holding that privity "includes those who are successors to a property interest . . . [and] those whose interests are represented by a party to the action"). Further, Plaintiff's RICO claims arise from the same transactions that formed the basis of those cases. *See Gray v. Bankers Trust Co.*, 82 A.D.2d 168, 170-71 (N.Y. App. Div. 3d Dep't 1981) ("A judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded." (citation omitted)). In fact, Plaintiff raised these same RICO claims in the State Court Action, and the state court, applying New York law, found that they were barred by *res judicata* based on the Foreclosure Action. The Court agrees with the state court.

Plaintiff's claims are also barred by collateral estoppel. Under New York law, "[c]ollateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001). For collateral estoppel to bar a claim, "[t]here must be an identity of issue which has necessarily been decided in the prior action and is

7

decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling." *Id.*

Although Plaintiff did not bring RICO claims in the Foreclosure Action, she raised the identical issue of whether mortgage fraud occurred, and the state court necessarily found that it did not. *See Graham*, 156 F. Supp. 3d at 506 (holding that collateral estoppel barred argument that defendant lacked standing where "it is clear that the issue of standing was necessarily decided by the state court because without deciding that [defendant] had standing, the foreclosure action could not have proceeded"). Further, as the state court held in the State Court Action, Plaintiff had a full and fair opportunity to contest this issue in the Foreclosure Action. Thus, under any of these three doctrines, Plaintiff's claims are clearly barred and must be dismissed.

### C. Sanctions

It is so apparent that Plaintiff's claims are barred that the Court warned Plaintiff's counsel during a pre-motion conference that it saw no possible basis to maintain the lawsuit and that he ought to reconsider filing an opposition unless he disagreed with any of the points raised by Defendants. *See* May 16 Conference Tr. at 3:4-8, 7:3-7. Nevertheless, he filed an opposition, even though he candidly admits in his opposition that "there is nothing I can [tell] this Court about res judicata, collateral estoppel, or the Rooker-Feldman doctrine." Pl.'s Mem. in Opp., Dkt. 22, at 8. It appears, then, that Plaintiff's counsel may have knowingly maintained a frivolous claim, a sanctionable offense under Rule 11. *See* Fed. R. Civ. P. 11(b)(2).

The Court notes that Plaintiff's counsel was previously sanctioned by Judge Engelmayer after bringing similar foreclosure-based RICO claims that were barred by *Rooker-Feldman*. *See Charles*, 2016 U.S. Dist. LEXIS 95725, at *20-24, *aff'd*, 716 Fed. Appx. 18 (2d Cir. 2017).

There, defendants' counsel moved for sanctions, and Judge Engelmayer granted the motion, finding that Plaintiff's counsel was "objectively unreasonable" in bringing the claims. *Id.* at *9, 21. Specifically, Judge Engelmayer noted that "the Amended Complaint is shot-through with plainly irrelevant, absurd, and/or scurrilous statements." *Id.* at *21.

Plaintiff's counsel takes a similar approach in his opposition to Defendants' motion to dismiss. Instead of attempting to contest the applicability of *Rooker-Feldman*, *res judicata*, and collateral estoppel, Plaintiff's counsel spends the bulk of his opposition analogizing Plaintiff's situation to an episode of the TV series "Black Sails," which addresses the "Golden Age of Piracy." *Id.* at 1-3, 9. After quoting extensive dialogue from the episode, counsel compares Defendants to the character of Mr. Guthrie, the pirates' "fence," a person who knowingly purchases stolen property. *Id.* at 1-2. He suggests that Plaintiff has "truly not received her day in court, as the various courts have deemed that the Defendants (that is, 'Mr. Guthrie'), were not involved in the crimes committed by the [nonparties] (that is, the 'Pirates')." *Id.* at 2.

Plaintiff, however, received multiple days in court. Those courts simply did not find in Plaintiff's favor. If Plaintiff wished to make this "fence" argument in state court, complete with pirate references, she could have done so. But these pirate tales serve no purpose here, given the obvious application of *Rooker-Feldman*, *res judicata*, and collateral estoppel.

Despite the frivolous nature of this suit, Defendants have not moved for sanctions, and the Court declines to impose sanctions *sua sponte*. Such an action requires a finding of bad faith, which the Court is not prepared to make on this record. *See Braun v. Zhiguo Fu*, No. 11-cv-4383, 2015 U.S. Dist. LEXIS 90652, at *35-41 (S.D.N.Y. June 19, 2015) ("[T]he subjective bad faith standard, as applied in the context of *sua sponte* Rule 11 sanctions, requires an attorney to have *actual knowledge* that a pleading or argument that he or she is advancing is frivolous.").

Even if Plaintiff's counsel is honest and well-intentioned, however, in the words of Captain Jack Sparrow, "[i]t's the honest ones you want to watch out for, because you never know when they're going to do something incredibly stupid." *Pirates of the Caribbean: The Curse of the Black Pearl* (Walt Disney Pictures 2003). Thus, although the Court will not make Plaintiff's counsel walk the plank today, the Court advises him that he will not recover any booty by doing something as "incredibly stupid" as repeatedly bringing the same, legally barred claims in new actions. If he persists, the Court will give no quarter next time.

## CONCLUSION

For the foregoing reasons, Defendants' motion is granted, and the case is dismissed without prejudice. The Clerk of Court is directed to terminate the pending motion and close the case.

Dated: New York, New York
August 2, 2018

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge